UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | PLAINTIFF |
| | ) | |
| v. | ) | No. 4:18CR00608-01 KGB |
| | ) | |
| | ) | |
| HENRY EDWARD GOODLOE | ) | |
| | | DEFENDANT |

**Sentencing Memorandum**

**I.    History and Characteristics of Henry Goodloe**

Henry Goodloe was just six years old the first time he chopped cotton. Born and raised in a small town in south Arkansas, chopping cotton would be his primary job from 1946–1962. Mr. Goodloe, now 78 years old, recalls just how hard the manual labor was on his body, mindset, and on those around him. He also recalls the day that the farmers cut their wages in half, immediately after (and in response to) the passage of the civil rights act.

In 1962, Mr. Goodloe was promoted to the role of tractor driver, so he no longer had to chop the cotton. Eventually he moved to Stuttgart, Arkansas, to work in the rice fields. After several years there, Mr. Goodloe was able to get a factory-line worker job at General Motors. He worked there for over twenty-five years and retired in 1993. After retirement he moved back home to Arkansas. Despite meeting the qualifications for

multiple types of benefits, Mr. Goodloe is proud to have never once sought or received any type of government assistance. He has always been a self-sustaining, productive, contributing member of society. He has never before been in trouble with the law.

Based on his life experiences—particularly those of chopping cotton and working in agriculture—Mr. Goodloe feels very strongly that African American's are due reparations for slavery and the attendant fall out and economic destruction he submits resulted from it. In 2009, Mr. Goodloe discovered that constituents had the ability to communicate with their elected representatives via email. He began communicating with Senator Stephen Cohen about his concerns surrounding reparations. Senator Cohen was responsive to his emails and even met with him in person. He told Mr. Goodloe that he understood his concerns but did not anticipate reparations would come to fruition during his lifetime. He later mailed Mr. Goodloe an autographed picture of him with President Obama—which Mr. Goodloe framed and placed next to a picture of Martin Luther King, Jr.

After multiple unanswered emails to Senator Tom Cotton, Mr. Goodloe, made an irrational decision and mailed him an envelope containing flour. The envelope was addressed to Senator Tom Cotton and stated "For Tom Only" above the address. Mr. Goodloe placed a return address label bearing his full name and home address on the envelope. Inside he placed a letter which read, "Senator Cotton, I been emailing you

about reparations to black peoples for slavery. You ignored me. Maybe this will get your attention."

The mail was intercepted at the mail sorting facility in D.C. and the FBI went to Mr. Goodloe's address on the envelope to interview him. He immediately admitted the conduct and expressed that he did this as an act of frustration for receiving no response from his elected official about his request to discuss reparations. After discussing it all with the FBI agents Mr. Goodloe agreed that it was not a good idea and that his thinking at the time that he mailed it was different than his thinking now.

In November of 2018, Mr. Goodloe was indicted in the Eastern District of Arkansas. At his plea and arraignment hearing he advised counsel he wished to plead guilty immediately and accept the consequences of his wrongs. Once defense counsel received discovery and had time to review it with Mr. Goodloe, a plea deal was reached and he entered a guilty plea in August of 2019. Mr. Goodloe now comes before this Court and requests a sentence of probation. A sentence to which the government does not object, and which is permissible under the advisory guidelines as his offense level falls within zone B of the sentencing table. PRE-SENTENCE REPORT, p. 8.

II.   **Departure**

   a.  **Aberrant Behavior**

Mr. Goodloe, first moves this court to depart downward because this conduct is aberrant behavior. Pursuant to United States Sentencing Guideline 5K2.20, this Court

may downwardly depart if the crime was committed without significant planning, was of limited duration, and represents a marked deviation from an otherwise law-abiding life. Mr. Goodloe satisfies all of these requirements. The court is also permitted to consider Mr. Goodloe's exemplary employment record. USSG 5K2.20, APP. NOTE 3.

### III. Variance

Imposition of sentence is governed by 18 U.S.C. § 3553. Factors that a sentencing court must consider are set forth in subsection (a). Leniency based on § 3553(a) factors would pass appellate review, in which the standard is that the sentence imposed by a district court was "not unreasonable." *United States v. McFarlin*, 535 F.3d 808, 811–12 (8th Cir. 2008). Mr. Goodloe presents several factors in support of a variance to a probationary sentence.

#### a. Prison not required for first-time offenders

Henry Goodloe is atypical of many federal-court defendants in that he has led a law-abiding life prior to committing the instant offense and, thus, has zero criminal history points. Courts have recognized that prison sentences have a greater significance for those imprisoned for the first time, indicating that many first-time offenders will be adequately deterred from future criminal conduct by the imposition of a probationary or home-confinement sentence. *See United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) (affirming a large downward variance in a child pornography case based on the trial

judge's determination that prison would have a greater impact on this defendant than one who had been imprisoned previously, which resonated with the goal of "just punishment" in § 3553(a)(2)(A) and "adequate deterrence" in § 3553(a)(2)(B)). Considering that Mr. Goodloe has never been in trouble, even the act of being supervised by a probation officer is significant for him. He has had no violations while on pre-trial release and has, by all accounts, been cooperative and respectful. This, at least arguably, indicates that he will behave in the same manner if sentenced to probation.

### b. Age & Lack of Criminal History

The United States Sentencing Commission has conducted research on the recidivism rates between varying criminal history categories. In the research series "Recidivism and the 'First Offender,'" the commission analyzed data from over 6,000 U.S. citizen offenders sentenced in the fiscal year 1992 who had zero criminal history points. United States Sentencing Commission, Recidivism and the "First Offender," at 4 (May 2004), available at: http://www.ussc.gov/Research_and_Statistics/Research_Publications/2004/200405_Recidivism_First_Offender.pdf (last visited January 12, 2020). The resulting analysis showed a substantial difference in recidivism rates for criminal defendants with zero criminal history points (11.7%) versus those with one criminal history point (22.6%). *Id*. at 13. Additionally, among those with zero criminal history points there were also significant differences in recidivism rates based on the amount of prior law-enforcement contact. Mr.

Goodloe—having never been arrested prior to the instant offense—would be most akin to group A of the study which recidivated only 6.8% of the time. The commission noted, "[i]ts low recidivism rate makes first offender group A stand out." *Id*. at 14.

Mr. Goodloe's age also supports the argument that he is unlikely to commit further crimes. In "The Effects of Aging on Recidivism Among Federal Offenders," the United States Sentencing Commission concluded that older defendants were substantially less likely to recidivate following release than their younger counterparts. Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited January 12, 2020). The study tracked defendants for eight years post-release. During this time, 13.4% of defendants 65 or older recidivated, compared to 67.6% recidivism rate of those younger than 21. *Id*. at 3.

## Conclusion

Henry Goodloe is a responsible, historically law abiding, hard-working man, who made a very poor decision. His history and characteristics support the requested departure and/or variance down to probation. The United States does not object to a probationary sentence.

WHEREFORE, the Defendant, Henry Edward Goodloe, respectfully requests that this Court grant his Motion for and impose a sentence of probation.

Respectfully submitted,

LISA G. PETERS
FEDERAL DEFENDER

By: /s/ Nicole Lybrand
Bar Number 2010215
Nicole Lybrand
Assistant Federal Defender
The Victory Building, Suite 490
1401 West Capitol Avenue
Little Rock, AR 72201
(501) 324-6113
E-mail: Nicole_Lybrand@fd.org

For: Henry Edward Goodloe, Defendant